

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **GWENDOLYN ERVIN,** | ) | |
| **PLAINTIFF,** | ) | |
| **VS.** | ) | |
| **HOUSING AUTHORITY OF** | ) | |
| **THE BIRMINGHAM DISTRICT;** | | |
| **RALPH D. RUGGS,** in his official | ) | **2:06-cv-1447-JHH** |
| capacity as Executive Director of | | |
| Housing Authority Birmingham | ) | |
| District; and **LINDA CARROLL**, in | | |
| her official capacity as Section 8 | ) | |
| Coordinator of Housing Authority | | |
| Birmingham District, | ) | |
| **DEFENDANTS.** | ) | |

## MEMORANDUM OF DECISION

The court has before it the May 1, 2007 motion (doc. # 28) of defendants

Housing Authority of the Birmingham District (HABD), Ralph D. Ruggs and

Linda Carroll for summary judgment.  Pursuant to the court's May 9, 2007 and

June 13, 2007 orders, the motion was deemed submitted, without oral argument,

on June 22, 2007.

### I. Procedural History

Plaintiff Gwendolyn Ervin commenced this action on July 25, 2006 by

filing a complaint in this court based upon the termination of her housing benefits under Section 8 of The United States Housing Act of 1937, 42 U.S.C. § 1437(f), et seq. More specifically, plaintiff claims that defendants violated federal regulations and her due process rights when they terminated her Section 8 rental assistance benefits. Defendants' May 1, 2007 motion for summary judgment asserts that plaintiff's claims fail as a matter of law.[1]

Both parties have filed briefs and submitted evidence in support of their respective positions. Defendants submitted a brief (doc. # 29) and evidence[2] (doc. # 30) in support of its own motion for summary judgment on May 1, 2007. On May 29, 2007, plaintiff filed a brief (doc. # 33) and evidence[3] (doc. # 34) in opposition to defendants' motion for summary judgment. On May 30, 2007, plaintiff amended her evidentiary submission (doc. #35), and on June 5, 2007, plaintiff filed an amended brief (doc. #39) in opposition to the motion for

---

[1]  Although the complaint contains allegations against HABD, Ruggs, and Carroll, plaintiff's brief does not develop any facts and contains no argument regarding the individual defendants. Accordingly, the court concludes that plaintiff has abandoned her claims against the individual defendants. See, e.g., Love v. Deal, 5 F.3d 1406, 1407 n.1 (11th Cir. 1993). In the alternative, even if not abandoned, the individual defendants would be entitled to qualified immunity. Summary judgment is due to be granted as to defendants Ruggs and Carroll.

[2]  The defendant submitted the following evidence: affidavit of Linda Carroll with exhibits; affidavit of Gwendolyn Ervin.

[3]  The plaintiff submitted the following evidence: deposition of Gwendolyn Ervin.

2

summary judgment.  On June 22, 2007, defendants filed a brief (doc. # 41) in reply to plaintiff's opposition.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  See id. at 323.  Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  See id. at 324.

The substantive law will identify which facts are material and which are irrelevant.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in

3

favor of the non-movant.  See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115

(11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

If the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted.  See id. at 249.

    The method used by the party moving for summary judgment to discharge

its initial burden depends on whether that party bears the burden of proof on the

issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four

Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the moving

party bears the burden of proof at trial, then it can only meet its initial burden on

summary judgment by coming forward with positive evidence demonstrating the

absence of a genuine issue of material fact; i.e. facts that would entitle it to a

directed verdict if not controverted at trial.  See Fitzpatrick, 2 F.3d at 1115.  Once

the moving party makes such a showing, the burden shifts to the non-moving party

to produce significant, probative evidence demonstrating a genuine issue for trial.

    If the moving party does not bear the burden of proof at trial, it can satisfy

its initial burden on summary judgment in either of two ways.  First, the moving

party may produce affirmative evidence negating a material fact, thus

demonstrating that the non-moving party will be unable to prove its case at trial.

4

Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  See Fitzpatrick, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  See Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

5

### III. Relevant Undisputed Facts[4]

Ervin was a participant in a Section 8 voucher rent assistance program administered by HABD in accordance with Section 8 of The United States Housing Act of 1937, 42 U.S.C. § 1437(f), et seq. (Carroll Aff. ¶ 9).  Congress created the Section 8 program "for the purpose of aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing." 42 U.S.C. § 1437f(a).  The Section 8 program is administered by local public housing authorities, such as the HABD, which enter into annual contributing contracts with the United States Department of Housing and Urban Development (HUD).  Under these contracts, subsidies compensate landlords for the difference between the rent the tenant can afford and the market rental rate.  In addition, HUD has promulgated implementing regulations for the Section 8 program at 24 C.F.R. § 982.

On or about August 29, 2005, Captain Mike Fisher of the Birmingham Police Department sent a letter to Levie Satisfield III, Ervin's landlord.  (Ex. C to Carroll Aff.)  The letter stated that a search warrant was served on his property on August 25, 2005, and that a quantity of illegal narcotics was found at that location.

---

[4] If the facts are in dispute, they are stated in a manner most favor to the non-movant.  See Fitzpatrick, 2 F.3d at 1115.

(Id.)  Because the unit at issue was occupied by Ervin, a participant in the Section 8 program administered by HABD, Satisfield forwarded the letter to the Leased Housing and Section 8 Department at HABD. (Carroll Aff. ¶ 12.)

In a letter dated September 14, 2005, HABD sent Ervin a letter stating that her "Section 8 rental assistance . . . will terminate 10/31/05 due to failure to comply with Section 8 regulations."  (Ex. C to Carroll Aff.) The reason given for the termination was "crime by a family member 982.533(a)(1) Drug-related criminal activity."  (Id.)  The section entitled "Factual Basis for Determination" stated "use of property for illegal drug sales and/or purchase."  (Id.)  The letter also notified Ervin of her right to request an informal hearing.  (Id.)  Rachel King, a Recertification Specialist in the Leased Housing and Section 8 Department of HABD and a subordinate of defendant Carroll,[5] made the initial decision to terminate housing assistance to Ervin. (Carroll Aff. ¶¶ 14-15.)

On or about September 20, 2005, King received a written request from Ervin for a hearing on the issue of whether or not the termination of public assistance was appropriate under the law.  (Carroll Aff. ¶ 19.)  An informal hearing was held on November 30, 2005. (Carroll Aff. ¶ 23.)  Pursuant to the

---

[5] King did not report to Carroll, but instead reported to the Assistant Leased Housing Manager, Helen Hyde.  (Carroll Aff. ¶ 15.)

7

HABD Section 8 Administrative Plan approved by HUD, Defendant Carroll was the hearing officer.  (Id. ¶¶ 23-24.)

In addition to Carroll and Ervin, the individuals present at the hearing were Helen Hyde, Assistant Manager Leased Housing and Section 8, Marshell Jackson, attorney for HABD, and Belinda Carwell, a neighbor.  (Ex. D to Carroll Aff.) Ervin was represented by attorney Barbara Luckett.  (Id.)  At the hearing, Hyde stated that the Section 8 office received a letter from Captain Fisher stating that illegal narcotics were found on the premises on August 25, 2005.  (Id.) Additionally, Belinda Carwell testified that she saw police officers pick up "reefer" in the front yard and that "there was a girl there."  (Id.)  Later in the hearing, however, when questioned by the hearing officer about her statement, Carwell denied making the statement.  (Id.)

Ervin also testified at the hearing.  She stated that no police officers entered her unit and that she had not seen a search warrant.  (Id.)   When questioned by the hearing officer about the woman arrested on her property, Ervin stated that "Sharon Rush" was arrested at the premises on August 25, 2005.  (Id.)  Ervin's attorney stated that Rush accompanied Ervin to the first informal hearing, which was postponed so that HABD counsel could be present, but that Rush could not come to this hearing.  (Id.)  The hearing officer's report commented that Ervin's

8

statements "varied from 'I don't remember' to 'I raise herbs'" and that "[t]he

information she provided had little, if any, relevance to the question at hand."

(Id.)

Both attorneys also spoke at the hearing.  Ervin's attorney stated that she

had been unable to obtain a police report regarding the incident.  (Id.)  Ervin's

attorney also provided the hearing officer with a police report dated August 25,

2005 (the date of the incident) in which Ervin had reported a robbery that occurred

on August 24, 2005.  (Id.)  The attorney for HABD reported that she spoke with

the Birmingham Police Department who stated that two detectives were sent to

Ervin's residence on August 25, 2005.[6]  (Id.)  HABD's attorney reported that the

first detective went to the unit at approximately 9:00 a.m. and made a narcotics

arrest of a female in possession of powder cocaine and marijuana.  (Id.)  Further,

the second detective executed a search warrant later that day and seized three

marijuana plants with a street value of approximately $6,000.  (Id.)

After the hearing, the hearing officer filed a written report that contains

findings of fact and the ultimate conclusion.  (Id.)  The hearing officer found, by a

---

[6] To be clear, there was not a police officer present at the hearing.  The attorney for
HABD learned of the alleged events through a telephone call with an individual at the
Birmingham Police Department.  The attorney then reported the information to the hearing
officer at the informal hearing.

preponderance of the evidence, the following:

> The owner of the unit for which Ms. Ervin receives Section 8 rental assistance was notified in writing by the Birmingham Police Department that a search warrant was executed at the unit and "illegal narcotics were found."  The owner provided the Housing Authority of the Birmingham District Section 8 Office with a copy of the notice. The HABD Attorney, Marshell Jackson, confirmed with the Birmingham Police Department that a narcotic arrest was made at the unit on August 25th, 2005 and a search warrant was executed on August 25, 2005 resulting in seizure of marijuana plants with a street value of approximately $6,000.00 No evidence was presented at the time of the hearing to the contrary.

(Id.)  The hearing officer further found that Ervin signed an HABD affidavit on three occasions prior to the incident attesting to the fact that she had "been counseled regarding participation as a tenant" in the Section 8 program, acknowledged receipt of the residents handbook, and had "covered with the HABD Representative all of [the handbook's] contents with regard to my **family obligations and responsibilities** . . . ."  (Id.) (emphasis in original).  Because "HUD regulations permit a Housing Agent to terminate Section 8 assistance to a participant family if they have violated a family obligation 24 C.F.R. 982.551(l)" and "Ervin indicated that she understood the requirement not to allow her unit to be used for drug-related criminal activity," the hearing officer upheld the termination of Ervin's assistance under Section 8.  (Id.)

## IV. Applicable Substantive Law and Analysis

In <u>Goldberg v. Kelly</u>, 397 U.S. 254 (1970), the United States Supreme Court

set the standard for pre-termination hearings for public assistance, which is a

constitutionally-protected property interest entitled to procedural due process. The

Court explained that due process requires that "a recipient have timely and

adequate notice detailing the reasons for a proposed termination, and an effective

opportunity to defend by confronting any adverse witnesses and by presenting his

own arguments and evidence orally." <u>Id.</u> at 267-68.  The Court further explained

that these rights are important "where recipients have challenged proposed

terminations as resting on incorrect or misleading factual premises or on

misapplication of rules or policies to the facts of particular cases." <u>Id.</u> at 268.

Following <u>Goldberg</u>, the federal government promulgated rules in

accordance with the decision of the Supreme Court.  The rules provide that a

Public Housing Authority (PHA), such as HABD, may terminate a participant's

assistance because of her action or failure to act.  <u>See</u> 24 C.F.R. § 982.552(a). One

ground for termination of assistance is if "any household member is currently

engaged in any illegal use of a drug." <u>Id.</u> § 982 .552(b)(1)(i)(A).  The PHA may

terminate assistance for criminal activity if it determines, based on the

preponderance of the evidence, that the participant has engaged in the activity,

regardless of whether she has been arrested or convicted for such activity.  Id. §

982.553(c).  In determining whether to terminate assistance, the PHA "may

consider all relevant circumstances such as the seriousness of the case, the extent

of participation or culpability of individual family members, mitigating

circumstances related to the disability of a family member, and the effects of

denial or termination of assistance on other family members who were not

involved in the action or failure." Id. § 982.552(c)(2)(i).

The PHA must give a participant an opportunity for an informal hearing to

consider whether the decision to terminate assistance for a participant's action or

failure to act is in accordance with the law, HUD regulations, and PHA policies.

Id. § 982.555(a)(1), (v).  The PHA must give the participant prompt written notice

that she may request a hearing, and the notice must: "(i) Contain a brief statement

of reasons for the decision, (ii) State that if the family does not agree with the

decision, the family may request an informal hearing on the decision, and (iii)

State the deadline for the family to request an informal hearing." Id. §

982.555(c)(2); see also id. § 982.552(d) (explaining that if the PHA terminates

assistance, it must give the participant a written description of her obligations

under the program, the grounds on which the PHA may terminate assistance

because of the participant's action or failure to act, and the PHA informal hearing

12

procedures).  The PHA must proceed with a hearing in a reasonably expeditious manner upon the request of the participant.  Id. § 982.555(d).

Before the hearing, a participant must be given the opportunity to examine and copy any PHA documents that are directly relevant to the hearing.  Id. § 982.555(e)(2)(i).  A participant may be represented by a lawyer at her own expense.  Id. § 982.555(e)(3).  The hearing "may be conducted by a person or persons designated by the PHA, other than a person who made or approved the decision under review or a subordinate of this person."  Id. § 982.555(e)(4)(i).  The hearing officer may regulate the conduct of the hearing in accordance with the PHA hearing procedures.  Id. § 982.555(e)(4)(ii).  Both the PHA and the participant must be given the opportunity to present evidence and may question any witnesses.  Id. § 982.555(e)(5). Evidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings.  Id.

At the conclusion of the hearing, the hearing officer must issue a written decision, stating briefly the reasons for the decision.  Id. § 982.555(e)(6).  "Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented a the hearing."  Id.  A copy of the decision must be furnished promptly to the participant.  Id.  The PHA is not bound by a hearing decision if it is contrary to HUD regulations or requirements,

or otherwise contrary to federal, State, or local law.  Id. § 982.555(f).

Plaintiff contends that the defendants violated federal regulations[7] and her due process rights when it terminated her Section 8 rental assistance benefits. More specifically, plaintiff argues that HABD (1) gave her inadequate notice of the reasons for termination of her benefits in violation of HUD regulations and her due process rights; (2) violated HUD regulations when it failed to give her an adequate hearing; (3) violated HUD regulations and her due process rights when it relied on an inadequate decision of the hearing officer; and (4) failed to consider mitigating circumstances in violation of HUD regulations.  (Pl. Br. at 5-19.)[8] Defendants' motion for summary judgment asserts that plaintiff's claims fail as a matter of law.  The court agrees with defendants, and summary judgment is due to be granted for the following reasons.

---

[7]   The court notes that it is unclear "whether or not there is a private cause of action under the [Section 8] regulations at issue."  Colvin v. Housing Auth. of City of Sarasota, Fla., 71 F.3d 864, 865 n.1 (11th Cir. 1996)   There is no guidance from the Eleventh Circuit and the other courts that have addressed the issue "are split and far from clear."  Id. (citing Wright v. Roanoke Redevelopment & Housing Auth., 479 U.S. 418 (1987); Loschiavo v. City of Dearborn, 33 F.3d 548 (6th Cir. 1994), cert. denied, 513 U.S. 1150 (1995); Ritter v. Cecil County Office of Housing and Cmty. Dev., 33 F.3d 323 (4th Cir. 1994)).  However, if it is a valid defense to this type of claim, defendants have not made the argument in this case, thus waiving the argument.  The court will assume, without deciding, that there is a private cause of action.

[8]  The court reordered plaintiff's contentions in an effort  to put her grievances in chronological order.

## 1.  Notice

Plaintiff argues that the notice she received was insufficient under the regulations and violated her due process rights because "[t]he notice fails to mention the person alleged to have committed criminal activity or give any reference to time or what criminal activity was alleged to have occurred."  (Pl. Br. at 11.)  As stated above, the applicable regulation concerning notice for termination of assistance requires that the termination notice (1) contain a brief statement of reasons for the decision to terminate assistance, (2) state that if the family does not agree with the decision, the family may request an informal hearing on the decision, and (3) state the deadline for the family to request an informal hearing.  24 C.F.R. § 982.555(c)(2).  The notice clearly complies with the last two aspects of the regulation.  HABD's September 14, 2005 termination letter informs Ervin that she may request an informal hearing, and that she must do so within ten days.  (Ex. C to Carroll Aff.)  Ervin does not dispute this fact.

The real dispute is whether the information contained in the notice is sufficient to satisfy the requirement of a "brief statement of reasons for the decision to terminate assistance."  24 C.F.R.§  982.555(c)(2).  The regulations do not explain what must be contained in the "brief statement of reasons," and the Eleventh Circuit has not provided any guidance on the issue.  HABD argues that

its letter provided the required information, but Ervin argues that it did not.  The court concludes that the information was sufficient.

The letter begins by stating that Ervin's "Section 8 rental assistance . . . will terminate . . . due to failure to comply with Section 8 regulations."  (Ex. C to Carroll Aff.)  It stated that the regulation violated is "Crime by Family Members 982.533(a)(1)[9] Drug-related criminal activity."  (Id.)  The "factual basis for determination" states "use of property for illegal drug sales and/or purchase."  (Ex. C to Carroll Aff.)

These few words succinctly state the reason for the termination of her section 8 benefits.  It is clear from the notice that her benefits are being terminated for drug activity by a family member involving the use of the property for the illegal sale and/or purchase of drugs.  That the notice did not specify the individual alleged to commit the illegal activity, nor the exact time does not make

---

[9]  The court notes that this citation to the Code of Federal Regulations is incorrect.  The citation on the notice, 24 C.F.R. § 982.533(a)(1), is either an old version of the C.F.R. (however, the court could not locate any version containing such a section number) or it is a typographic error.  The correct section referring to crime by family members and resultant termination of Section 8 assistance is 24 C.F.R. § 982.553(b)(1).  In addition, 24 C.F.R. 982.551 lists participant obligations, with subsection (1) prohibiting members of the household from engaging in drug-related criminal activity.  That the citation is incorrect does not change the court's analysis in this case.  First, Ervin does not argue that the incorrect citation resulted in her not understanding the notice or allegations.  Second, the actual words describing the violation of the section 8 regulations are "adequate notice detailing the reasons for the proposed termination."  Goldberg, 397 U.S. at 267-68.  Although the incorrect citation does not change the analysis in this case, it would not be unwise for HABD to examine its termination notice form to ensure the correct citation is used.

it deficient.[10]  There is no requirement that the notice give a detailed description of events.

Moreover, the court finds Ervin's argument disingenuous, at best, in light of the fact that Ervin brought the individual arrested, her son's girlfriend, to the first hearing which was cancelled.  That she brought the individual arrested to the first hearing is strong evidence that the notice sufficiently informed Ervin of the incident about which the notice referred.  There is no evidence before the court that she was unaware of the incident underlying the termination notice nor that she was unable to prepare a defense in light of the notice.  Cf. Billington v. Underwood, 613 F.2d 91, 95 (5th Cir. 1980); Edgecomb v, Housing Auth. of the Town of Vernon, 824 F. Supp. 312, 313 (D. Conn. 1993).  The court, therefore, concludes that the notice was sufficient.

## 2.  Hearing

Plaintiff contends that HABD violated the HUD regulations when it failed to provide plaintiff with an adequate hearing.  Specifically, plaintiff argues that the hearing was inadequate because HABD did not present any witnesses other than its attorney.  (Pl. Br. at 8-9.)  Plaintiff, therefore, concludes that the decision was

---

[10]  Contrary to plaintiff's argument, the court notes that the notice did provide "what criminal activity was alleged to have occurred."  The notice specifically states the crime as "use of property for illegal drug sales and/or purchase."  This is sufficient.

17

impermissibly based completely on hearsay.  (Id.)

Plaintiff's argument is unpersuasive for two reasons.  First, § 982.555(a)(5) specifically states, in pertinent part, that: "Evidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings."  24 C.F.R. 982.555(a)(5).  Plaintiff seeks to hold defendants to a much more rigid evidentiary standard than that imposed by HUD or PHA regulations.  In a PHA informal hearing, the hearing officer is not meant to apply the rules of evidence applicable to judicial proceedings; thus, it is clear by the plain meaning of § 982.555(a)(5) that hearsay statements may be considered by the hearing officer in an informal PHA hearing without regard to the rules of evidence.

Second, plaintiff is incorrect in her contention that the decision was based purely on hearsay.  The HABD presented evidence in the form of the letter from the Birmingham Police Department reporting that a search warrant was served on Ervin's property on August 25, 2005, and that a quantity of illegal narcotics was found at that location.  In addition, Ervin's neighbor testified at the hearing that she saw police officers pick up "reefer" in the front yard and that "there was a girl there."  The court also notes that Ervin had an opportunity, and did, testify at the hearing.  She was also represented by an attorney.  For the foregoing reasons, the

18

court concludes that HABD provided Ervin with an adequate hearing.

### 3.  Decision

Next, plaintiff argues that HABD "violated due process and 24 C.F.R. § 982.555(e)(5) as to the findings in and as to issuance of the hearing officer's decision."  (Pl. BR. at 11.)  Specifically, Ervin contends that the decision of the hearing officer was deficient for three reasons: (1) it was based "on a mere conclusory statement; (2) the decision cites a regulatory section as the basis for the termination not cited in the notice and not cited by Carroll in her affidavit; and (3) the regulations do not provide for termination of section 8 benefits for the arrest of a guest.  (Pl. Br. at 15-17.)  Plaintiff's arguments fail.

First, unlike the cases cited by plaintiff, the hearing officer's decision was not based on conclusory statements.  The decision made detailed findings of fact regarding the incident that were all supported by the evidence presented at the hearing.  Notably, plaintiff presented no evidence to the contrary, and, in fact, testified in her deposition consistently with the facts found by the hearing officer.

Second, the citation in the hearing officer's order is the correct citation of the family obligation violated by Ervin.  The citation in the order, 24 C.F.R. § 982.551, lists the obligations of participants in the section 8 housing program.  Subsection (l) states that "members of the household may not engage in

19

drug-related criminal activity or violent criminal activity or other criminal activity that threatens the health, safety or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of the premises" and cites § 982.553 which gives the HABD authority to terminate assistance based on such criminal activity.  24 C.F.R. § 982.551.  That the termination notice and affidavit of the hearing officer contain incorrect citations (see footnote 11, infra) does not equate with a violation of the regulations or due process.

Ervin's final argument, that the regulations do not allow termination of benefits for the arrest of a guest, misses the mark.  Ervin's benefits were terminated because of the seizure of the marijuana plants on her property, not the arrest of a guest.  The arrest of the guest, her son's girlfriend, led to the execution of the search warrant.  In executing that search warrant, the police seized marijuana plants growing on Ervin's property.  That fact is undisputed and was the basis for the termination of her section 8 housing benefits.  (Ex. D to Carroll Aff.)  The decision of the hearing officer did not violate due process or the federal regulations.

### 4.  Mitigating Circumstances

Finally, plaintiff contends that HABD violated 24 C.F.R. § 982.552(c)(2) when it failed to consider mitigating circumstances.  (Pl. Br. at 17-19.)  This

20

argument is without merit.  The regulation cited by plaintiff is discretionary.  The regulation states that HABD "may consider all relevant circumstances such as . . . mitigating circumstances related to the disability of a family member."  24 C.F.R. § 982.552(c)(2).  Even if it were mandatory, which it certainly is not, there is no such mitigating evidence in the record.  The only "mitigating circumstance" stated by plaintiff in her brief is that she "was on the section 8 program for over twelve years."  (Pl. Aff.)  The court is at a loss to understand why plaintiff's tenure in the program mitigates the undisputed fact that drugs were found on her premises. Additionally, in her deposition, plaintiff describes her ignorance about drugs, and specifically, about how to identify the marijuana plant.  The court notes, however, that plaintiff admitted that (1) police removed two flower pots of marijuana from the back yard, (2) the girlfriend of her son (who lives at the property) was arrested in possession of illegal drugs immediately after walking off the premises, (3) her sons who live at the property have used illegal drugs, and (4) she has not taken any affirmative steps to prevent illegal drug use on the premises.  (Ervin Dep. at 53, 57, 71, 74.)  With that background, the court finds no mitigating circumstances in this case.

21

## V.  Conclusion

In summary, the court finds that no material issues of fact remain and that defendants Housing Authority of the Birmingham District, Ralph D. Ruggs and Linda Carroll are entitled to judgment as a matter of law as to all claims asserted by plaintiff.

A separate order will be entered.

**DONE** this the __9th__ day of July, 2007.

_____
SENIOR UNITED STATES DISTRICT JUDGE